REED *et al. v.* CHARPING.

(In Banc. Feb. 24, 1947.)

[29 So. (2d) 271. No. 36332.]

478

Dent & Ward and Burkett H. Martin, all of Vicksburg, Fielding L. Wright, of Jackson, and Means Johnston, of Greenwood, for appellants.

Clements & Clements, of Rolling Fork, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Appellants contracted with appellee to purchase a tract of farming lands comprising five thousand acres at the price of $250,000. Appellants paid $150,000 in cash. The deed was deposited as an escrow with the Citizens Bank & Trust Company of Belzoni, to be delivered upon payment by appellants of the balance due. Pending final payment, appellants occupied and made extensive and expensive improvements thereon. They later paid to the escrow agent the remainder of the purchase price and received the deed.

The foregoing facts are taken from the allegations of the bill, to which a general demurrer was sustained, and from which we select the following allegations here assumed to be true. The parties entered into a contract by which Charping agreed to locate for appellants all property lines; Charping would retain an undivided one-fourth mineral interest in the Manny Plantation, and appellants would be entitled to lease and delay rentals thereon from and after consummation of the contract; out of the purchase price a brokerage fee of $11,250 was to by paid to C. Sevier; Charping agreed to pay all outstanding mortgages through the escrow agents out of the purchase money; seller was to deliver to buyer a copy of an existing timber contract and of all mineral leases and transfers thereon.

The bill further alleged that appellee has fraudulently misrepresented the quantity, quality and location of the lands; that he had represented that said lands "were not subject to damage or inundation from seep water"; that he did not locate the boundaries of the lands; that he has not furnished the escrow agent a list and description of the existing mortgages and liens; that he has appropriated to his own use all lease rentals; that the escrow agent, unless restrained, will deliver to Charping the funds paid to it "less any amounts paid by Charping in accordance with said contract," thereby causing a mul-

tiplicity of suits, and causing irreparable harm, as well as endangering complainant's chances of recovery of damages resulting from the deficiencies in the quantity and quality of the lands which damages in the alleged sum of $75,000 are claimed.

The prayer of the bill is for injunction against the payment by the escrow agent of the funds deposited by complainants; for discovery of the rentals received by defendant and an accounting thereof; and for fixing of a lien thereon upon the impounded funds to the extent of the damages shown; and for decree requiring defendant to establish the property lines alleged to involve an outlay of $6,000. The prayer further demands that defendant deliver deed showing a reservation of royalties upon the Manny Place to include only a one-fourth non-participating interest. As to this last element of relief, we may interpose that both the contract and the deed are consistent in describing such interest as an "undivided one-fourth interest in and to all the oil, gas and mineral rights," etc.

The chancellor sustained the demurrer, also a motion to dissolve the injunction which ran only to the escrow agent and had been granted, and a motion to transfer the cause to the circuit court. Solicitor's fees were allowed to counsel for Charping. Although there was also a special demurrer by Charping alleging multifariousness and a demurrer by him to the cross bill of the bank, the decree recites that the cause came on "to be heard, on the motion to dissolve an injunction, on original bill, and general and special demurrer thereto," and it was decreed that "the motion and demurrer be, and the same are hereby sustained and the injunction previously sued out in this cause be and is hereby dissolved, and the escrow agent ordered to pay over to defendant Irby Charping the money in its hands due." As stated, the motion to transfer was sustained. The decree allowed an appeal.

The appellee attacks in limine the right of appeal from an order transferring the cause, citing our Constitu-

tion, Section 147. We are not unmindful of the clear direction of this section denying the predicating of error upon the mere mistake in transferring a cause of equity jurisdiction to the circuit court. But here we are confronted with an appeal from a decree which likewise sustained a general demurrer grounded upon a finding of a complete absence of equitable rights, and the allowance of an appeal therefrom. We are alert to the probabilities of confusion attendant upon our reading into Section 147 an exception, where the appeal tests whether substantial equities are thereby denied complainant. Robertson v. F. Goodman Dry Goods Co., 115 Miss. 210, 76 So. 149, 151. In this case the language used was: "While we conceive it to be the duty of the circuit court to proceed without question with a cause transferred to it by proper decree of the chancery court, it yet remains that the chancellor might in some instances be in error in transferring a cause that manifestly presents grounds for equitable relief, and that could not be tried in a common-law court, according to right and justice. . . . In such cases the very right of the complainant would depend upon his remedy, and among other rights of litigants they sometimes have the right to equitable remedies, without which their very rights could not be enforced or wrongs done them redressed. If a case of which equity has original jurisdiction should be wrongful(ly) transferred by the chancellor to the circuit court, and an appeal prosecuted by permission of the chancellor, we would be bound to hold that the substantial rights of the litigants are presented." Further support is found in Warner v. Hogin, 148 Miss. 562, 114 So. 347.

We therefore examine whether the bill presents such substantial equities. It is true that the principal relief sought sounds in damages, yet there is ample allegation that compliance with the contract has not been but should be compelled. The allegation supporting the prayer for accounting and discovering would present difficulty if viewed apart from the entire relief sought. Likewise,

the granting of injunction will have to be adjudged in the light of the complete allegations. We draw back from approval of such device when used to impound funds in the hands of a third party after the manner of garnishment or sequestration, yet until the matter is heard on its merits it is not possible to adjudge its propriety as a necessary procedure. Compare Simmons v. Lard, Walk. 159. Nor do we place the right to equitable relief upon the theory that specific performance may be decreed when damages from fraudulent representations is the sole relief sought.

We are of the opinion that there are elements of relief whose refusal would work a denial of substantial equitable rights amounting to injustice. We accept the appeal as allowed from the decree sustaining the general demurrer. We must ignore the circumstances that the bank filed an answer and cross-bill, to which later a demurrer was filed. The entire matter has thus far been adjudicated upon the general demurrer to the bill.

We are of the opinion that there was error in sustaining the general demurrer, and in dissolving the injunction, and that action thereon should await a hearing by the Chancellor upon answers to be filed.

Reversed and remanded.