AMERICAN RUBBER AND PLASTICS CORPORATION *et al., Plaintiffs-Appellees,* *v.* THE FIRST NATIONAL BANK OF CHICAGO *et al.,* Defendants-Appellants.

(No. 54484; ▮▮▮▮▮

First District—November 23, 1970.

Schiff, Hardin, Waite, Dorschel & Britton, of Chicago, (William T. Hart and William S. McDowell, of counsel,) for appellants.

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Lucille Lane, Assistant Attorneys General, of counsel,) intervenor on behalf of the People of Illinois.

Milroy Blowitz and Alexander J. Ross, both of Chicago, for appellees.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal from a decree entered on the pleadings. Plaintiffs filed an amended complaint which sought injunctive or in the alternative declaratory relief against the sale by defendants of 149,750 shares of American Rubber and Plastics Corporation stock without first offering the stock to plaintiffs. Defendants moved for judgment on the pleadings or in the alternative summary judgment. The trial court denied defendants' motions and decreed that defendants are required to endorse said shares of stock with the right of first refusal restriction purusant to certain provisions of an August 1969 trust established by Peter G. Torosian. From this decree defendants and the Attorney General of Illinois, intervening on behalf of the defendant charitable foundation, ap-

peal. The sole issue in the case is whether the right of the first refusal binding on the trustees of the August Trust of Peter Torosian follows the stock and binds the defendant distributees of the trust when they want to sell the stock.

Peter G. Torosian, the deceased settlor who granted the right of first refusal to the plaintiffs John Chalik, Sr., and Chalik's sons, John Chalik, Jr., Eugene Chalik, and also American Rubber and Plastics Corporation, was president and with his uncle, John Chalik, Sr., a founder of American Rubber and Plastics Corporation (hereinafter ARP). Their business, started in a small shop on the south side of Chicago, grew into the highest earning urethane products company in the United States. In 1960, Torosian owned 50 percent of the common stock of ARP and the Chaliks owned the remaining 50 percent. In July of 1960, Torosian and the Chalik family each decided to sell 20 percent of their common stock interest of 500,000 shares to the public through an underwriting. It was about this time that Torosian established his estate plan which consists primarily of the Peter & Elizabeth Torosian Foundation, the May Trust, the August Trust and the August will. We will discuss these instruments in chronological sequence.

On May 1, 1960, Peter Torosian established an irrevocable *inter vivos* trust by a trust agreement with the First National Bank of Chicago and funded it with 25,000 shares of the common stock of ARP. The defendants, First National Bank of Chicago and Torosian's wife Elizabeth, were designated co-trustees. The trust instrument (hereinafter the May Trust) provides, in substance, life income payments to Torosian, his wife Elizabeth and his sisters. The remainder is left to the Peter G. and Elizabeth Torosian foundation, an established non-profit Illinois corporation. The May Trust agreement contains a provision authorizing the trustee to receive and commingle trust property of any other trust created by the settlor, but does not contain an explicit provision granting the right of the first refusal to the Chaliks.

On August 15, 1960, Torosian established a revocable *inter vivos* trust by a trust agreement with the First National Bank of Chicago and funded it with his 30 percent interest in ARP stock and other property. The defendants, First National Bank and Elizabeth Torosian, were designated co-trustees of the August Trust. The August Trust contains the disputed clause which grants to plaintiffs the right of first refusal "in the event that, after my (the settlor's) death, any part or all of the stock held in the trust estate described in this Paragraph 5B is to be sold." The August Trust also provides that after the death of the settlor, the trust estate is to be divided into two funds, a Fund A trust and a Fund B trust. The Fund A trust is a so-called marital trust consisting of $500,000 worth of

trust property (ARP stock) from which income is payable for life to the settlor's widow, Elizabeth Torosian. The trust property is held subject to Mrs. Torosian's right to withdraw all or any part of the trust property and subject to her right to appoint the remainder by will. Upon the death of the settlor's widow, the remainder of the Fund A trust is to be commingled with the Fund B trust and managed as if it had been a part of Fund B at the time of the settlor's death. The Fund B trust consists of the balance of the trust property after deduction of the Fund A trust and certain gifts in trust to family members. The trust instrument provides that if the settlor's wife survives the settlor (which she did) Fund B property shall be delivered to the trustee of the May Trust to be administered in accordance with the terms of that trust.

The final instrument, the will of Peter G. Torosian, was executed on August 17, 1960, two days after the August Trust. Torosian's will provides that the residue of his estate, after the payment of claims, legacies and expenses, is to be "held, administered, managed and distributed" by the trustee of the August Trust in accordance with the terms and provisions of the August Trust. The defendants, First National Bank and Mrs. Torosian, were designated as co-executors of the Torosian will.

It is within the context of these instruments that we must read the disputed clause of the August Trust. The provision in its entirety states:

"5B (e) In the event that, after my death, any part or all of the stock held in the trust estate described in this Paragraph 5B is to be sold, the Trustee shall first offer to sell such stock to those then living of John Chalik, Sr., John Chalik, Jr., and Eugene Chalik and also to American Rubber and Plastics Corporation, or any successor thereto, and to any employee benefit plan or trust established by American Rubber and Plastics Corporation, or any successor thereto before offering it for sale to any other purchaser, the price at which any one or more of the aforementioned may buy such stock to be the market price on the date which such sale is made, such offer to be of fifteen days duration at the end of which any such stock, not purchased by those of the aforementioned may be sold as the Trustee deems appropriate."

Defendants do not dispute plaintiffs' right of first refusal to purchase the 35,650 shares of ARP stock now held in the August Trust if they are sold by the trustees of that trust. Defendants contend, however, that the right of first refusal granted to plaintiffs under the terms of the August Trust does not follow and is not impressed upon any ARP stock which may be withdrawn by Mrs. Torosian or distributed by the trustees. Defendants attempt to distinguish the sale of stock from the sale of withdrawn or distributed stock, and rely on the use of the words "The Trustee

shall sell" in Paragraph 5B (e) for this distinction. Defendants assert that a possible rationale for Paragraph 5B (e) in the August Trust is that the trustees held over two million dollars of ARP stock at the time of Torosian's death in 1964; that they had a duty to pay Torosian's debts to the estate creditors; that because of this large block of stock and little cash in the estate, the trustees might have had to sell some of the stock during the probate administration to pay off claims against the estate; and that the settlor intended plaintiffs to have the right of first refusal regarding this stock during the period of probate administration. Defendants support this assertion by relying on the words "held in the trust estate" in Paragraph 5B (e) and construing them as limiting the trust estate to the period betwen the settlor's death and the distribution of the stock to the beneficiaries of the trust estate. Furthermore, the defendants contend that any construction of 5B (e) which results in extending the right of first refusal beyond the period of administration conflicts with the settlor's expressed intent to permit his wife to withdraw or appoint the portion of the trust property left to her in Fund A and his intent to have Fund B managed in accordance with the provisions of the May Trust.

■■ We disagree with defendant's contentions. The provision in dispute states: "In the event that, after my death, any part or all of the stock held in the trust estate described in this Paragraph 5B is to be sold. \* \* \*" We do not construe this provision narrowly so as to apply it only to the sale of stock by the trustee during the period between the settlor's death and the distribution of the stock to the beneficiaries of the trust estate. We point out that the settlor uses the term 'trust estate' not only in Paragraph 5B (e), the disputed clause, but in Paragraph 5B (b) twice and 5B (d) once. In Paragraph 5B (b) the settlor states: "During my life, the Trustee shall issue to me \* \* \* proxies \* \* \* to vote all stock at any time held in the trust estate as described in this Paragraph 5B." Also in Paragraph 5B (b) the settlor states "after my death \* \* \* so long as any stock is held in the trust estate as described in this Paragraph 5B, the Trustee shall consult with John Chalik, Jr., regarding the voting of proxies," and in 5B (d) the instrument reads "The Trustee shall have no responsibilities or liabilities for any loss to or depreciation of the trust estate occasioned by the manner in which I shall exercise or refrain from exercising any of the herein contained directions." It is clear from the context in which the term 'trust estate' is used in Paragraph 5B that the settlor did not intend the term to refer solely to the period of probate administration as contended by defendants since the settlor used the term to describe the trust corpus during his life. While the term 'trust estate' has been the

source of confusion even in some of the early American equity cases, *Cooper v. Cooper*, 5 N.J. Eq. (1 Halst. Ch.) 9, 12 (1845), the settlor's use of the term throughout the August Trust militates against defendants' interpretation. Intention is to be sought in the meaning of the language used as made manifest by the various provisions of an instrument considered as a whole. *Street v. Chicago Wharfing Co.* (1895), 157 Ill. 605, 613, 41 N.E. 1108.

We also find a construction of 5B (e) which extends the right of first refusal beyond the case of a sale by a trustee does not conflict with the settlor's expressed intent to permit his wife to withdraw or appoint the portion of the trust property left to her in Fund A and his intent to have Fund B managed in accordance with the provisions of the May Trust. As has been mentioned, the August Trust was divided into two funds, A and B. Mrs. Torosian received Fund A since she had the power of withdrawal. Certain bequests were made out of Fund B with the remainder flowing into the May Trust. This was done immediately upon the settlor's death. The settlor intended his wife's power of withdrawal to commence upon his death. He intended the remainder of Fund B to flow into the May Trust after his death.

The settlor also intended the right of first refusal to operate after his death. Furthermore, the settlor intended the August Trust and its provisions to be the cornerstone of his estate plan since pursuant to his will the residue of his estate poured into the August Trust. Consequently, the words "the Trustee shall first offer to sell such stock to (the plaintiffs)" should be construed giving greater regard to the settlor's ascertained intent than to the particular formulation used to express the intent. *Chicago, Madison and Northern Railroad Co. v. National Elevator Co.* (1894), 153 Ill. 70, 71, 38 N.E. 915.

■■ "In construing a written instrument, its letter should be controlled by its spirit and purpose bearing in mind that the terms employed are servants and not masters of an intent, and are to be interpreted so as to subserve, and not to subvert, such intent." *United States Trust Co. v. Jones* (1953), 414 Ill. 265, 270, 111 N.E.2d 144.

Looking to the present case in the light of this principle of construction, the settlor intended the man with whom he organized the corporation to have the right of first refusal to purchase ARP stock "in the event any part or all of the stock held in the trust estate is to be sold." We have already determined that the term 'trust estate' as used by the settlor does not refer solely to the period of probate administration. We hold that the obligation to extend the right of first refusal does not apply only to the case of a sale by the trustee. The settlor knew that his wife might exercise her power to withdraw from Fund A, and that

Fund B would be managed in accordance with the May Trust. He also intended that the right of first refusal apply in the event of a sale of stock whether or not the power of withdrawal was exercised. For this reason, we find the use of the words "trustee shall sell" is controlled by the spirit and purpose of paragraph 5B (e) so that it does not exclude the application of the restrictive endorsement to the sale of stock distributed by the trustees pursuant to the provisions of the trust. We find no sharp distinction between the trustee's sale of stock and the beneficiaries' sale of stock which has been distributed to them pursuant to the trust. *Saul Plast v. Metropolitan Trust Co.* (1948), 401 Ill. 302, 312, 82 N.E.2d 155.

■■ Consequently, Mrs. Torosian's right of withdrawal and the management of Fund B in accordance with the May Trust is limited by, but does not conflict with plaintiffs' right of first refusal. Defendants are required to endorse the shares of ARP stock with the right of first refusal restriction pursuant to the August Trust of Peter Torosian.

For the foregoing reasons, the decree of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J., and MURPHY, J., concur.