(No. 43949.—

AMERICAN RUBBER AND PLASTIC CORP. *et al.,* Appellees, v. THE FIRST NATIONAL BANK OF CHICAGO *et al.,* Appellants.

*Opinion filed Nov. 30, 1971.—Modified on denial of rehearing January 27, 1972.*

UNDERWOOD, C. J., dissenting.

WILLIAM T. HART and WILLIAM S. McDOWELL Jr. of SCHIFF, HARDIN, WAITE, DORSCHEL & BRITTON, of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Chicago, (FRANCIS T. CROWE, LUCILLE LANE, and STEPHEN D. PORTER, Assistant Attorneys General, of counsel,) for Intervenor-Appellant, the People.

MILROY BLOWITZ and ALEXANDER J. ROSS, both of Chicago, for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The sole question presented in this appeal is whether a restriction in the nature of a right of first refusal contained in a trust instrument, and admittedly applicable in the event of sale by the trustees of certain shares of American Rubber and Plastics Corp. (ARP), applies in the event of their sale by the distributees of the trust estate. The circuit court of Cook County entered judgment on the pleadings and rendered its decree ordering that the right of first refusal is applicable to sales by the distributees and further ordering that the stock certificates be endorsed to show the restriction. The appellate court affirmed (266 N.E.2d 375), and we allowed defendants' petition for leave to appeal.

The facts are well stated in the opinion of the appellate court and will be restated only to the extent necessary to this opinion. On August 15, 1960, Peter G. Torosian created a revocable *inter vivos* trust, hereafter called the August Trust, which at the time of his death on August 19, 1964, held 146,650 shares of ARP.

Paragraph 5B(e) of the August Trust agreement provides: "In the event that, after my death, any part or all of the stock held in the trust estate described in this Paragraph 5B is to be sold, the Trustee shall first offer to sell such stock to those then living of John Chalik, Sr., John Chalik, Jr., and Eugene Chalik and also to American Rubber and Plastics Corporation, or any successor thereto, and to any employee benefit plan or trust established by American Rubber and Plastics Corporation, or any successor thereto, before offering it for sale to any other purchaser, the price at which any one or more of the aforementioned may buy such stock to be the market price on the date on which such sale is made, such offer to be of fifteen days duration at the end of which any such stock not purchased by those of the aforementioned may be sold as the Trustee deems appropriate."

Between the date of Torosian's death and the filing of this suit the trustees had distributed 85,000 shares of the stock to the trustees of an irrevocable trust created by Torosian in May, 1960, hereafter called the May Trust, and 26,000 shares to defendant Elizabeth Torosian, his widow. Under the terms of the trust agreements creating both the May and August Trusts, upon Torosian's death, Elizabeth Torosian became a co-trustee with defendant, The First National Bank of Chicago. Following the distribution of the 26,000 shares to Elizabeth Torosian she sold 2,5000 shares to ARP and placed the remaining 23,500 shares in a trust which she created on August 19, 1965.

Under the terms of the August Trust, unless sold by the trustees in accordance with paragraph 5B(e), a portion of the ARP stock was to be distributed to Fund A and thereafter, depending upon certain contingencies, either to Elizabeth Torosian or Fund B. The remainder of the stock was distributable only to Fund B, through it to the May Trust, and ultimately to the Torosian Foundation.

The purpose of judicial construction of a trust instrument is to ascertain the intent of the settlor and carry it out *(Olson v. Rossetter, 399 Ill. 232)* and in so doing the instrument must be considered as a whole.

Considering the trust instrument as a whole, it is our opinion that if at any time after his death the stock was to be transferred by the trustees or the distributees named in the trust instrument, it was the intent of the settlor that it be first offered in accordance with the provisions of paragraph 5B(e). There is no limitation placed upon the time "after my death" and no attempt to restrict the amount of stock to which the provision is applicable. It is further noted that Funds A and B are not separate trusts, but "Funds" created as part of the August Trust, that the trustees of the August Trust are also trustees of the May Trust and that Elizabeth Torosian, the distributee of Fund A, is one of the co-trustees. In our opinion, to hold that the trustees can render meaningless the provisions of

paragraph 5B(e) by the simple device of distributing the shares to the May Trust, or that Elizabeth Torosian can do so by the exercise of her right of withdrawal from Fund A, would fly in the face of sound rules of judicial interpretation. If it were the settlor's intent that the right of first refusal contained in paragraph 5B(e) apply only to sales by the trustee prior to any distribution, it would have been a simple matter to so limit it. The circuit and appellate courts correctly construed the trust instrument and the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. CHIEF JUSTICE UNDERWOOD, dissenting:

I cannot agree with the conclusion reached by the majority.

"Where the use of rules as to a presumed intention so twist and warp the evident meaning of a will as to render it ambiguous or unreasonable, and when, on the other hand, the *words used in their ordinary sense are plain and their meaning clear, construction demands the use of the plain intention* over the presumed intention, which is fixed by rules used only where the actual intent cannot be ascertained." *(Storkan v. Ziska, 406 Ill. 259, at 263 - 264,* emphasis added.) Paragraph 5B(e) provides in clear terms that the right of first refusal is applicable only to sales of stock by the trustee of the August Trust. The instrument provided that "*** the *Trustee* shall first offer to sell such stock ***" (emphasis added) and this right of first refusal existed only in regard to "*** the stock *held in the trust estate* ***" (emphasis added). The majority states that since no limitations were placed upon the time "after my death", and there was no attempt to restrict the amount of stock to which the provision is applicable, the restriction on the alienability of the stock should be extended to dispositions by any distributee of the trust. The terms of paragraph 5B(e), however, must be considered in context.

Article V deals with the power, and limitations on the power, of the trustee in connection with the ARP stock, but the majority holding, it seems to me, replaces the word "Trustee" in paragraph 5B(e) of article V with the words "Trustee or any distributee of the trust." Furthermore, the phrase "trust estate" throughout the August Trust instrument was used consistently in regard to the actions and responsibilities of the trustee toward the property placed in the trust. The interpretation affirmed here by the majority results in an inconsistent and perhaps meaningless use of that phrase in paragraph 5B(e). In that provision the phrase "described in paragraph 5B" indicates that the stock is ARP stock and thus the phrase "held in the trust estate", to have meaning, must refer to the period when such stock is subject to sale by the trustee—the period during which the stock is held in the trust with legal title in the trustee. It should be noted that substantially the same phrases were used by the settlor in paragraph 5B(b) which provides: "During my life, *the Trustee shall* issue to me, or to such person that I shall nominate from time to time, proxies (with or without power of substitution) to vote all *stock at any time held in the trust estate as described in this paragraph 5B* at each and every meeting of stockholders of each such company in which said stock is owned. *After my death or while I am not legally competent, so long as any stock is held in the trust estate as described in this Paragraph 5B, the Trustee shall* consult with JOHN CHALIK, JR., regarding the voting of proxies of all such stock, *but the decision of the Trustee* as to the manner in which all such proxies shall be voted shall be made upon the *Trustee's* sole and independent judgment and shall be final and conclusive upon all interested persons." (Emphasis added.) The clear import of this provision is to impose an obligation on the trustee as to ARP stock which he holds in trust. Yet the same key phrases used in a similar context in 5B(e) are given an inconsistent and expanded meaning by the majority.

The opinion of the court gives no reason for its conclusion other than: "If it were the settlor's intent that the right of first refusal *** apply only to sales by the trustee prior to any distribution, it would have been a simple matter to so limit it." In my judgment that is precisely what the settlor did—clearly limit it to sales "of the stock held in the trust estate" by "the Trustee" who "shall first offer to sell such stock to" the Chaliks, *etc.* The provisions of paragraph 5B(e) are not rendered meaningless by this interpretation. The trustee was required to assume any unpaid probate claims and taxes (paragraph 2B), and so the contingency existed that some stock might have to be sold to meet these commitments; the trustee had the power to sell trust property for the advantage of the trust estate or in connection with a relocation of the trust in another State or country. (Paragraph 5A.) Thus, it is quite logical that the right of first refusal applied only to the trustee's sale of the stock, which had not been distributed to the objects of the settlor's bounty, when necessity or investment judgment required such a sale.

This, to me, plain meaning of paragraph 5B(e) is consistent with the other trust provision. Paragraph 3A(4)(a), subsequently designated as 3A(5)(a), provides: "If my wife survives me, the Trustee shall pay, deliver and convey Fund B to the then acting Trustee of the trust estate created under a certain Trust Agreement entered into between myself, as Settlor, and THE FIRST NATIONAL BANK OF CHICAGO, as Trustee, on the 1st day of May, 1960, *to be added by said Trustee to said trust estate and to be held, administered, managed and distributed by said Trustee and said Trustee's successors in office, in accordance with the terms and provisions of said trust instrument.*" (Emphasis added.) The terms of the May trust provide no right of first refusal, and to impose the right of first refusal on the stock conveyed from the August Trust to the May Trust would be contrary to the settlor's direction that the stock become part of the trust estate of

the May Trust and be dealt with in accordance with the terms of that trust.

Clearly evident from the trust terms is the settlor's primary intent to provide for the wishes and needs of his wife and to ultimately endow the settlor's charitable foundation. Article III gives to his wife the income for life from Fund A, the unrestricted right to withdraw any or all of the stock forming that fund, and the power to appoint in fee the remainder of that fund. Article III also provides for any remainder of Fund A and for Fund B, after minor gifts to grandchildren and nephews, to be conveyed to the May Trust which requires the distribution of income to the settlor's wife and sisters and then a transfer of the trust property in fee to his charitable foundation. The effect of the interpretation adopted by the majority is to impair the value of the ARP stock these distributees would hold—a result surely neither intended nor desired by the settlor. That potential impairment arises because any outside group acquiring one half of the forty percent of publicly-owned stock would normally pay a substantial premium above market value for the corporate control which the thirty percent owned by the appellants could provide. Imposition upon those sales of the right of first refusal imposed by the majority on any sale by the trust beneficiaries effectively precludes sales of this type. While it can be argued that the settlor would prefer the Chaliks to retain control, I think the more reasonable conclusion is that, in such circumstances, he would prefer the result which the plain meaning of the language he used produces —that sales by the widow or other distributees are free from restriction.

I would thus hold that it was the settlor's intent that the right of first refusal contained in paragraph 5B(e) apply only to sales by the trustee of the August Trust and that he has simply and clearly expressed his intent. I would accordingly reverse the judgment of the appellate court.