498 So.2d 955 (1986)
Virginia ROBBINS, Appellant,
v.
Joan HUNYADY, W. Paul Robbins, Susan Babjack, John Robbins, Christine Robbins, Daniel Robbins, Margaret Rivers, Michael Robbins, Anne Rice, Bonnie Kraus, Norman Johnston and Marlene Platz, Appellees.
No. 85-2603.
District Court of Appeal of Florida, Second District.
July 23, 1986.
Rehearing Denied August 26, 1986.
*956 William L. Blackwell of Blackwell & Beal, P.A., Naples, for appellant.
John W. Emerson, P.A., Naples, for appellees Joan Hunyady, W. Paul Robbins, Susan Babjack, John Robbins, Christine Robbins, Daniel Robbins, Margaret Rivers, Michael Robbins, and Anne Rice.
GRIMES, Acting Chief Judge.
This appeal involves the interpretation of a declaration of trust.
Walter P. Robbins and Virginia Robbins, his wife, executed a declaration of trust in 1979. The declaration created two trusts, Trust A for the husband and Trust B for the wife. Trusts A and B were funded equally by property of the declarants owned as tenants by the entirety. Section II of the declaration provided in part:
SECTION II

Payment of Income During the Lifetime of Declarants
2-1 During Husband's lifetime the Trustee shall pay the income from Trust A in convenient installments to Husband or otherwise as he may from time to time direct and also such sums from principal as he may request at any time in writing.
2-2 During Wife's lifetime the Trustee shall pay the income from Trust B in convenient installments to Wife or otherwise as she may from time to time direct and also such sums from principal as she may request at any time in writing.
Under the declaration, if the husband died first, one half of his adjusted gross estate was to be distributed from Trust A to Trust B, and the wife would receive the income from what was left in Trust A for the balance of her life. If the wife died first, one half of her adjusted gross estate was to be distributed from Trust B to Trust A and the husband would receive the income from what was left in Trust B for the rest of his life. Upon the death of the survivor, Trusts A and B would be combined and distributed to the husband's nine children and the wife's three children in equal shares. The declaration could be amended or revoked according to the following language:
6-8 Declarants may at any time or times by instrument in writing delivered to the Trustees, amend or revoke this Declaration in whole or in part as to the property set aside in each Declarant's separate trust, (Trust A in the case of Husband, Trust B in the case of Wife). The Trust property to which any revocation relates shall be conveyed to the revoking Declarant or as he or she shall direct. This power is personal to Declarants and may not be exercised by Declarants' legal representatives or others, either during or after the life of the Declarant whose separate trust is involved.
The husband died in 1982, at which time Trust A had assets valued at $544,244 and Trust B had assets valued at $543,222. One half of the adjusted gross estate of the husband, $345,084, was transferred to Trust B by wife who was then the sole trustee of both trusts. At this point, there remained assets valued at $240,028 in Trust A and assets valued at $888,306 in Trust B. Thereafter, the wife requested that the assets of Trust B be transferred into a new trust. Under the provisions of the new trust, the wife is the sole trustee and income beneficiary for life, and upon *957 her death the assets are to be distributed to her children.
After making the requested transfer of assets to the new trust, the wife filed suit for declaratory judgment concerning the legality of her action. The wife's children did not contest the transfers, but the husband's children contended that she had no authority to make them. They pointed out that the effect of the transfers was to eliminate them from the opportunity to share in the bulk of the assets of William P. and Virginia Robbins.
At trial, the attorney who drafted the declaration of trust testified that it was designed to take advantage of the marital deduction. He explained that when the first declarant died, the decedent's estate would only be entitled to the marital deduction if the surviving declarant had full control over the disposition of the assets being transferred into the surviving declarant's trust. He said that this right was preserved to the wife under paragraph 2-2. He also pointed to paragraph 6-8 which authorized the wife to revoke the declaration with respect to Trust B. However, in response to the court's inquiry, he admitted that at the time the declaration was executed, the parties contemplated that after their deaths, their assets would be divided equally among their twelve children. The court entered a judgment for the husband's children invalidating the transfers and directing the wife as trustee to maintain the assets in Trust B according to the provisions of the original declaration of trust.
On appeal, the wife contends that the declaration of trust unambiguously permits her to do what she wishes with the assets of Trust B. We agree. Even if we were to accept appellees' contention that the pluralizing of the word declarants appearing at the beginning of paragraph 6-8 prohibits the revocation of any part of the declaration after the death of one of the parties, we find that paragraph 2-2 provides the wife with the unequivocal authority to invade the principal of Trust B in its entirety at any time. Appellees' reliance upon the pluralizing of the word declarants which appears in the title of section II is unpersuasive because section II contains provisions referring to the lifetime of more than one of the declarants. There is nothing in this section which suggests that the wife's authority to invade Trust B cannot be exercised after her husband's death. When the language is clear, it is immaterial whether or not the resulting distribution is equitable. In re Estate of Marks, 102 So.2d 301 (Fla. 2d DCA 1958).[1]
In reaching his conclusion, the trial judge apparently gave great weight to the following testimony of the attorney who had drafted the declaration:
THE COURT: Jackson, what was their intent? Did they discuss the intent about the children? Did they want it split the way it is now or want it split one-twelfth? Did they ask you that or not or tell you that?
THE WITNESS: I would have to put it to you this way, at the time this document was drawn both parties were in agreement that when they were both gone, the 12 children should get it.
Events happened thereafter that caused Virginia not to want Walt's children to get that amount.
THE COURT: But when it was drafted, they wanted it split 12 ways; is that correct?
THE WITNESS: Yes, but they understood that there were these revocable and amendable provisions so that either party after the other died could direct his B or his A as he wanted it to go.
It's just like somebody makes out a will and he leaves it to his wife and then to his children. They know that after he dies, his wife can make out a new will and leave it any way she wants to. It's no different than with a will. If you're leaving your wife in complete control 
*958 While we see nothing in the colloquy reflecting an intent which is contrary to the language of the declaration, the fact remains that the court was not entitled to rely on extrinsic evidence of the settlors' intent concerning an unambiguous trust instrument. Knauer v. Barnett, 360 So.2d 399 (Fla. 1978). It is the intention which the settlor expresses in the trust instrument which controls, not that which he might have had in mind when the trust was executed. Iles v. Iles, 158 Fla. 493, 29 So.2d 21 (1947).
An important factor in arriving at the settlor's intent is the apparent scheme adopted by him for the disposition of his property as shown by the terms and provisions of his trust. In re Estate of Parker, 110 So.2d 498 (Fla. 1st DCA), cert. denied, 114 So.2d 3 (Fla. 1959). Here, the declaration of trust was carefully drawn in order to take advantage of the marital deduction. The construction urged by the children would preclude the husband's estate from receiving this tax benefit. In Northern Trust Co. v. Tarre, 86 Ill.2d 441, 56 Ill.Dec. 671, 427 N.E.2d 1217 (1981), a husband and wife had executed a trust agreement much like that in the instant case which created two trusts and provided that upon the death of the first, sufficient assets from the decedent's trust would be transferred to the other in order to take maximum advantage of the marital deduction. The question before the court was whether the surviving spouse could revoke or amend the agreement with respect to his or her trust. In construing the trust language to permit a unilateral revocation, the court said:
The original instrument reserved to both settlors the power to "revoke or amend this agreement as to" their respective trusts. Nothing in the agreement limits the exercise of this power or indicates that the power may be exercised only during the time that both settlors are living. Also, the agreement does not require the consent of one settlor to the exercise of the power by the other. The reservation of the power is unrestricted. We must conclude that the reservation of this unrestricted power was agreed to by both the settlors, since the provisions were included in the executed trust agreement and both settlors reserved these powers. We cannot view these provisions as mere "boiler plate" language as the Kaplan defendants imply. Rather, the reservation of the power to revoke or amend appears to be an essential part of an estate plan designed to take maximum advantage of the marital deduction provisions for Federal estate tax purposes... .
This carefully drafted plan, to qualify for the Federal estate tax marital deduction, would not achieve its intended purpose if the agreement were to prohibit the survivor from revoking or amending the trust after the death of the other settlor.
86 Ill.2d at 445, 56 Ill.Dec. at 675-676, 427 N.E.2d at 1221-1222.
The provisions of the declaration clearly permit the wife to cause the transfer of all of the assets in Trust B into the new trust which favors her children. Of course, the provisions of the declaration continue to control the disposition of the assets of Trust A.
Reversed.
SCHOONOVER and FRANK, JJ., concur.
NOTES
[1] In re Estate of Marks, as well as the cases of Iles v. Iles, 158 Fla. 493, 29 So.2d 271 (1947), and In re Estate of Parker, 110 So.2d 498 (Fla. 1st DCA), cert. denied, 114 So.2d 3 (Fla. 1959), each involved the interpretation of a will, but the general rules of construction of written instruments apply to the construction of trust instruments. Watson v. St. Petersburg Bank & Trust Co., 146 So.2d 383 (Fla. 2d DCA 1962).