*In re* ESTATE OF LOUIS G. BORK, Deceased.

Second District   No. 85—0439

Opinion filed July 29, 1986.

Walter J. Donat, of Donat & Donat, of Batavia, for appellant.

Robert A. Pond and Michael B. Carsella, both of Weissman, Smolev & Pond, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Gary-Wheaton Bank, as administrator of the estate of Louis G. Bork, deceased, filed motions during the probate of the estate for court approval of the sale of 16.46 acres of real estate held in a land trust and for a construction of the land-trust agreement. An order was entered May 2, 1985, approving the sale and authorizing the payment of $13,822.36 real estate broker's commission. An order of May 21, 1985, declared that, based on the terms of the land-trust agreement, Gary-Wheaton Bank succeeded to deceased's power of direction over the land trust. Louis A. Bork (Bork), a son of deceased, appeals from both orders. He also filed motions for a stay of enforcement of judgment of the orders in both the trial court and appellate court which were denied. We take this appeal pursuant to Supreme Court Rule 304(b)(2) (103 Ill. 2d R. 304(b)(2)).

The issues raised in this appeal are: (1) whether the probate court erred in construing the power of direction in a trust agreement to vest in the administrator of deceased, (2) whether the probate court had jurisdiction to order the sale of the subject real estate to pay the mortgage, and (3) whether the probate court erred when it ordered real estate sold out of an estate without taking any evidence to determine the adequacy of the offer, the appropriateness of the procedure utilized, and whether the sale was in the best interest of the estate.

Louis G. Bork died January 2, 1982, leaving a will which was dated August 2, 1974, and named two of his sons, Louis A. Bork and Harvey Bork, co-executors. The will was admitted to probate May 21, 1982. The co-executors were unable to agree on the proper administration of the estate and each filed a petition to remove the other. By agreed order dated April 7, 1983, both co-executors resigned and Gary-Wheaton Bank was named successor executor. The bank petitioned for appointment as administrator with will annexed. Thereafter, letters of office were issued to the bank.

The principal asset of the estate is a 74.37373% beneficial interest in a land trust, Trust No. 2169, with Old Second National Bank of Aurora as trustee. The land trust was created by a trust agreement dated December 28, 1974, in a standard-form land-trust agreement. As part of the agreement, 116 acres of land in Kane and Du Page counties were described and deeded to the trustee. Deceased was the only beneficiary named in the agreement and held a 100% beneficial interest at the time the trust was created. The agreement provides:

"It is understood and agreed by the parties hereto and by

any person who may hereafter become a party hereto, that the trustee will deal with said real estate only when authorized to do so in writing and that the trustee will, (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by the beneficiaries,) on the written direction of _____ Louis G. Bork

or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with the title to said real estate ***."

Another pertinent provision of the agreement states:

"IT IS UNDERSTOOD AND AGREED between the parties hereto, and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and that no beneficiary hereunder at any time shall have, any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds as aforesaid. The death of any beneficiary hereunder shall not terminate the trust nor in any manner affect the powers of the trustee hereunder."

A motion for construction of the will filed by Gary-Wheaton Bank stated that from December 28, 1974, through September 3, 1976, deceased made gifts of fractions of his beneficial interest in the land trust to his seven then living children and the children of his two deceased children. Each of his seven living children received an assignment of 2.90348% of the beneficial interest. The three children of one deceased child jointly received an assignment of 2.77722% of the beneficial interest. The only child of the other deceased child received an assignment of 2.52469% of the beneficial interest. The beneficial in-

terests of the grandchildren of deceased were held in trust with Bork and Harvey Bork as co-trustees.

The real estate held in trust was subject to a mortgage of approximately $435,000 with semiannual interests payments due of around $30,000. Gary-Wheaton Bank filed a motion asking for court approval to list the real estate for sale. It stated that a sale would be in the best interest of the estate as the farmland was generating only $3,000 income per year from a lease with Bork as lessee and this was barely enough to pay the real estate taxes on the property. Gary-Wheaton Bank also stated that the estate did not have sufficient funds to pay the periodic interest payments due on the mortgage. The payments had been paid by legatees under the will who, according to the bank, were either unwilling or unable to continue making the mortgage payments.

Gary-Wheaton Bank alleged that it was essential that the property be sold to prevent the mortgage from going into default and foreclosure; that the estate needed the proceeds of the sale to pay administrative expenses and make the required distribution to the legatees under the will; and that an attempt to sell the 74.37373% beneficial interest would not realize an amount close to the true value of the interest.

Gary-Wheaton Bank requested that a guardian *ad litem* be appointed for the minor beneficial-interest holders. The bank stated that the consent of all the holders of beneficial interests was necessary to list the property and that all of the current holders had consented except for the minor grandchildren. A guardian *ad litem* was appointed, and the court authorized the bank to execute a letter of direction to the trustee to list the property for sale with Sutherlin Associates, Inc., on October 3, 1983. The listing, dated October 1, 1983, was to continue until October 1, 1984, listed the property at $9,200 per acre and called for a commission of 8% of the gross sales price due.

More than a year later, Gary-Wheaton Bank filed a motion for approval of the sale of two parcels of real estate, one parcel consisting of 10.851 acres for a price of $32,553 ($3,000 per acre) and the other parcel consisting of 5.608 acres for $140,266.50 ($25,000 per acre). This was an average of $10,500 per acre for the total of 16.46 acres being sold. The two parcels are contiguous and center on the existing farmhouse and buildings. The bank asked that the sales be approved as the funds generated by the sale would reduce the mortgage on the farm and allow it to negotiate a lower interest rate for the remainder of the mortgage resulting in significantly reduced yearly debt-service payments. The bank also asked for authorization to pay the real estate broker's commission in the amount of $13,822.36.

Bork filed an objection to the sale of the real estate on May 2, 1985, stating that the price for the 16.46 acres was inadequate, that the sale would result in 29% of the frontage of the real estate being sold which would jeopardize the value and saleability of the rest of the farm, that the sale would cut off easy access to Fabyan Parkway from the Du Page County portion of the farm, and that no provision for access to the remaining land is reserved. He also objected to payment of the broker's commission as the listing agreement had expired, and raised procedural objections under the Probate Act of 1975, among which was that section 20—4(c) precludes the sale of real estate after three years from the date of a decedent's death for the purpose of paying claims or expenses of administration (Ill. Rev. Stat. 1983, ch. 110½, par. 20—4(c)). Bork attached a July 25, 1983, appraisal of 10.795 acres of the property which valued it at $10,500 per acre plus $86,500 for the improvements and a deed showing that property near the real estate in issue was valued at $16,000 per acre.

A hearing on Gary-Wheaton Bank's motion was held May 2, 1985, but no evidence was presented. The bank argued that no one was willing to buy the entire property, that this was the only serious cash offer received after attempting for over two years to find a purchaser and that there is access to the remainder of the property. Bork first argued that the Probate Act precluded approval of the sale and renewed his arguments regarding price, frontage, and access. He admitted that he had not been able to find anyone willing to make a higher offer, but requested 90 days in order to purchase the property himself. The bank responded that an offer to sell 10 acres of the property to Bork was open for at least six months and apparently he then attempted but was unable to find financing.

The court entered an order the same day approving the sale and authorizing the payment of the broker's commission. Following this order, a problem arose because Bork and Harvey Bork, as co-trustees of the trusts holding the beneficial interests for the minor grandchildren, stated they could not take action to authorize the trustee to execute the necessary documents for the sale because of a conflict of interest. Gary-Wheaton Bank then filed a motion for construction of the land-trust agreements or, in the alternative, for instructions to trustee of *inter vivos* trusts, asking that the agreement be construed to provide that the bank, as administrator, succeeded to deceased's power of direction over the land trust. After hearing arguments on May 21, 1985, the court entered an order which stated that, by the terms of the trust agreement, the bank succeeded to deceased's power of direction over the land trust and may, therefore,

"direct the Land Trustee of that Land Trust with respect to any sale, mortgage, or other disposition or dealing with the real estate in that Land Trust without the agreement or concurrence of any of the other owners of the beneficial interest therein, until such authority is withdrawn or altered by the unanimous written direction or instruction of all of the owners of the beneficial interest in Trust No. 2169."

■ Bork's first argument on appeal is that the trial court erred in its May 21, 1985, order by construing the trust agreement to mean that Gary-Wheaton Bank, as administrator of deceased's estate, has power of direction over the trust. He contends initially that the trial court's order should be reversed as the trust agreement itself was not before the court and no evidence was presented regarding the intent of deceased. This argument is without merit as the trust agreement was attached to the bank's motion, was before the trial court, and is part of the record. No other evidence was necessary as it was possible to determine deceased's intent from the language of the instrument itself. See *Ford v. Newman* (1979), 77 Ill. 2d 335, 338-39, 396 N.E.2d 539.

■ Bork next contends that the clear, unambiguous language of the trust agreement provides that deceased had the sole power of direction to the trust while he was alive, but upon his death the power of direction became vested in those persons who were beneficiaries at the time. The trustee of an Illinois land trust has both legal and equitable title to the property, and the beneficiary's interest is personal property and not real property. (*In re Estate of Alpert* (1983), 95 Ill. 2d 377, 382, 447 N.E.2d 796.) The owner of a beneficial interest in a land trust is accorded four basic powers: (1) to possess, manage and physically control the real estate; (2) to receive all income generated by the property; (3) to direct the trustee in dealing with title to the real estate; and (4) to receive the proceeds of any sale of the property made pursuant to the power of direction. (*Patrick v. Village Management* (1984), 129 Ill. App. 3d 936, 939, 473 N.E.2d 493; see Ill. Rev. Stat. 1985, ch. 29, par. 8.31. See generally *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540.) The beneficiaries of a land trust exercise these rights by virtue of a contract, the trust agreement. (*Patrick v. Village Management* (1984), 129 Ill. App. 3d 936, 940, 473 N.E.2d 493.) The relationship between the trustee, the beneficiaries, and the holder of the power of direction is determined by the documents comprising the trust agreement, including any amendments to the trust agreement effectuated by assignment or otherwise. *Dorman v. Central National Bank* (1981), 97 Ill. App. 3d 429, 433, 422 N.E.2d 1019.

Here, the trust agreement provides:

> "[T]he trustee will deal with said real estate only when authorized to do so in writing and that the trustee will, (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by the beneficiaries,) on the written direction of _____ Louis G. Bork _____

> or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with the title to said real estate ***."

This language permitted the power of direction to be exercised by deceased solely *or* the beneficiaries at the time. It is clear that, until his death, deceased had the power to direct the trustee to convey title without the concurrence of any other holder of part of the beneficial interest.

Bork does not dispute that deceased had this power, but argues that the power of direction is a personal power and, therefore, deceased's power of direction ended at his death. He contends that, as no one else was named in writing to succeed to this power, the provision of the trust agreement cited above plainly provides that the power can now only be exercised by the "beneficiaries at the time." This, he contends, means that all of the holders of beneficial interests in the land trust, deceased's seven living children, the trusts holding the interests for the four children of his deceased children, and deceased's estate, must agree before the power of direction may be exercised and the real estate sold.

Gary-Wheaton Bank argues that the trial court properly construed the language of the trust agreement to mean that it succeeded to deceased's power of direction. The bank contends that the language in another part of the trust agreement clearly provided that deceased's power of direction passed to it as his executor or administrator, as follows:

> "[T]he interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in case of the death of any beneficiary

hereunder during the existence of this trust, *his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law* \*\*\*." (Emphasis added.)

■ No Illinois cases directly on point have been cited by the parties or found. Cases have recognized, however, that the power of direction over the trustee of a land trust may be a legitimate property interest. (See *Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33, 41, 407 N.E.2d 856; *Favata v. Favata* (1979), 74 Ill. App. 3d 979, 986, 394 N.E.2d 443; see also H. Kenoe, Land Trusts sec. 2.19 (Ill. Inst. Cont'g. Legal Educ. 1981).) The power of direction, therefore, is a property interest capable of passing with the beneficial interest to the executor or administrator of the estate.

■■ ■ The rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments as well. (*In re Support of Halas* (1984), 104 Ill. 2d 83, 92, 470 N.E.2d 960.) The purpose of judicial construction of a trust agreement is to ascertain and give effect to the settlor's intent. (104 Ill. 2d 83, 92, 470 N.E.2d 960.) It is not the function of a court to modify the document or create new terms different from those to which the parties have agreed. (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 450, 427 N.E.2d 1217.) The settlor's intent is to be determined, if possible, from the language of the instrument itself (*Ford v. Newman* (1979), 77 Ill. 2d 335, 338-39, 396 N.E.2d 539), and the provisions of the instrument are to be read as a whole, not in isolation (*In re Estate of Steward* (1985), 134 Ill. App. 3d 412, 414, 480 N.E.2d 201).

■ In the present case, when the two pertinent provisions of the trust agreement referred to above are read together, it is clear that the bank succeeded to deceased's power of direction as part of his beneficial interest in the land trust. What is not evident from an examination of the trust agreement is whether deceased's power to direct the trustee solely, without the concurrence of any of the other beneficiaries, passed to the bank as administrator. The provision relied on by Bork specifically designates who has the power of direction over the trustee. In this case, under the terms of that clause, deceased reserved to himself the power to direct the trustee solely, without the approval of the other beneficiaries. The clause also provided that, in the alternative, all the beneficiaries acting together, including deceased if he remained a beneficiary, have the power to direct the trustee. This provision is not a testamentary provision and does not provide that the power to act solely to direct the trustee survived deceased's death.

The provision relied on by Gary-Wheaton Bank expressly provides that a beneficiary's right and interest, which includes the power of direction, passes to his or her executor or administrator. The bank clearly, as administrator, is holder of deceased's 74.37373% interest in the land trust and has the power to direct the trustee concurrently with the other beneficiaries. However, as the clause does not specifically provide that the power to direct the trustee solely passes to the administrator, that would not be the proper construction. Testamentary provisions in a land-trust agreement should be carefully drafted and the power of direction over a land trust should be expressly and explicitly provided for in the trust agreement. (See H. Kenoe, Land Trusts secs. 2.25, 3.9 (Ill. Inst. Cont. Legal Educ. 1981).) As deceased made no provision that his power to direct trustee solely would pass to his administrator (see, *e.g.,* H. Kenoe, Land Trusts sec. 2.47 (Ill. Inst. Cont'g. Legal Educ. 1981) (specific form for passing power of direction after death)), the power of direction, by the terms of the agreement, is held by all the beneficiaries of the land trust. The trial court's construction must be reversed. In light of this disposition, Bork's other objections to the trial court's orders need only be briefly addressed.

Bork contends that the trial court did not have jurisdiction because the trustee was a necessary party and was not made a party to the action by proper service. This argument is without merit. The record shows that the trustee was served with notice of the motion on May 15, 1985, but was not a party to the probate proceeding. While it has been held that a trustee is a necessary party in all suits respecting trust property because he holds legal title (*Peoples Bank & Trust Co. v. Gregory* (1932), 347 Ill. 397, 399, 179 N.E. 856), it has been recognized that, when a land trust is involved, the beneficiaries are the proper parties to litigation involving their rights and liabilities of management, control, use and possession of the property (*Just Pants v. Bank of Ravenswood* (1985), 136 Ill. App. 3d 543, 547, 483 N.E.2d 331). Therefore, the beneficiaries, as the real parties in interest, adequately represented any interests of the trustee. Moreover, any arguable question concerning the failure to join the trustee does not deprive a court of jurisdiction over the parties properly brought before it. (See *Just Pants v. Bank of Ravenswood* (1985), 136 Ill. App. 3d 543, 545-46, 483 N.E.2d 331; *In re Vaught* (1981), 103 Ill. App. 3d 802, 804, 431 N.E.2d 1231.) Bork was a party to the proceeding, and the trustee, the nonparty, has not sought relief below or on appeal. The trial court clearly had jurisdiction to enter the order.

Bork next challenges the May 2, 1985, order and argues that

the probate court did not have jurisdiction to order the sale of the real estate as the mortgage was not presented as a claim against the estate and as, pursuant to section 20—4(c) of the Probate Act of 1975, real estate cannot be sold more than three years after a deceased's death to pay debts of the estate (Ill. Rev. Stat. 1983, ch. 110½, par. 20—4(c)). These arguments are inapplicable to this case. The mortgage on the real estate was not a debt of the estate, as the estate only holds a beneficial interest in the land trust. The trustee holds legal and equitable title and is absolute owner of the real estate at law. (*In re Estate of Alpert* (1983), 95 Ill. 2d 377, 382, 447 N.E.2d 796.) Therefore, real estate owned by the estate is not being sold, and the statute does not apply to this situation.

■■■ Bork also contends that the trial court erred when in its May 2, 1985, order it ordered real estate sold out of the estate without taking any evidence to determine the adequacy of the offer and the appropriateness of the procedure utilized and without determining whether the sale was in the best interest of the estate. Gary-Wheaton Bank responds that any issue regarding the May 2 order approving the sale of a portion of the real estate is now moot because that property has been sold in a *bona fide* sale to third parties not parties or nominees of a party to this action and both the trial court and this court denied a stay of the sale pending appeal. Bork does not dispute the fact that the sale has now been consummated to third parties not interested in this action; nor does he ask for any relief from the May 2 order except to state that the correct legal procedures should be followed.

Because Bork was unsuccessful in perfecting a stay of the sale, any reversal of the May 2 order approving the sale would have no effect on the property interest conveyed to the third parties (87 Ill. 2d R. 305(i)), and any issue based on the propriety of what is now an executed transfer to third-party purchasers is moot (*Horvath v. Loesch* (1980), 87 Ill. App. 3d 615, 618-20, 410 N.E.2d 154). No relief is requested by Bork from this court which would alter the rights of the parties hereto. It is well established that a reviewing court will dismiss a pending appeal where the court has notice of facts making it impossible to grant effective relief to either party. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76, 491 N.E.2d 1160.) A matter is considered moot when it presents or involves no actual controversy, interests or rights of the parties, or where the issues have ceased to exist. (*First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 233, 456 N.E.2d 7.) Accordingly, this issue is moot and we need not address it.

For the foregoing reasons, the May 21, 1985, order of the circuit court of Du Page County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

NASH, P.J., and UNVERZAGT, J., concur.