SECOND DIVISION
March 28, 2006

No. 1-05-1419

JAMES HOXHA and ROGER HOXHA,           )        Appeal from the
                                       )        Circuit Court of
     Plaintiffs-Appellants,            )        Cook County.
                                       )
          v.                           )
                                       )
LASALLE NATIONAL BANK, AS TRUSTEE      )
U/T/A DATED JULY 23, 1958 AS TRUST     )
NO. 21785, and DONNA FORREST,          )        Honorable
                                       )        Thomas P. Quinn,
     Defendants-Appellees.             )        Judge Presiding.


JUSTICE WOLFSON delivered the opinion of the court:

The plaintiffs insist that the beneficial owner of certain real estate should be allowed to reach from the grave to require a subsequent beneficial owner to sell them the property.

Plaintiffs Roger Hoxha and James Hoxha filed a complaint for specific performance of an alleged contract to sell real estate held in a land trust. The plaintiffs contend the former beneficiary of the trust, Doris Robbert, contracted with them to sell the property for a fixed price after her death. The successor beneficiary, defendant Donna Forrest, was not aware of the alleged agreement.

Following a trial on the merits, the trial court found for the defendants Forrest and LaSalle National Bank on the issue of specific performance and awarded monetary damages to the plaintiffs to reimburse them for repairs made to Robbert's property. The plaintiffs appeal. We affirm the trial court.

1-05-1419

FACTS

In an Amendment to Trust Agreement, dated February 27, 1998, Doris Robbert is named beneficiary of the trust that owns the property in question. The Amendment to Trust Agreement provides, in part:

"DORIS ROBBERT, alone, during her lifetime, may sell, assign, transfer or otherwise dispose of all or any part of her beneficial interest hereunder, or all or any part of the trust property, and may use and consume proceeds thereof, and that she also may amend, alter or revoke from time to time, any provisions herein made for successors in interest in event of her death, by an instrument in writing which shall in each case be filed with and accepted by the Trustee hereunder."

At trial, Roger Hoxha and his son James testified they own property at 1040 West Argyle Street in Chicago. They bought the property in 1980. The property consists of 24 apartments and several businesses, including a liquor store owned by the Hoxhas. Until her death in June 2002, Robbert was the owner of property at 5018 North Kenmore Avenue, next door to the Hoxhas' property. Roger and James said they were not aware Robbert's property was held in a land trust until after her death. Roger and his sons made repairs to Robbert's property and paid for the costs. Robbert would reimburse them for the repairs. The Hoxhas also would collect rent from the tenants of Robbert's garage and give the money to her.

2

At some point, the parties discussed the possibility of Robbert selling her property to the Hoxhas. Introduced at trial was a document entitled "First Amendment to Kenmore Avenue Property Agreement" ("Amendment"). The Amendment, dated May 19, 1999, is signed by Robbert, Forrest, Rexhep Hoxha (a/k/a Roger), Xhemal Hoxha (a/k/a James), and Audulla Hoxha. The "Kenmore Avenue Property Agreement" referenced in the Amendment was not allowed into evidence at trial. In the Amendment, the parties agree to amend paragraph 1 of the Kenmore Avenue Property Agreement to state:

> "Owner and Successor Beneficiary agree to and do hereby grant unto Potential Purchasers the right to purchase said Property, exclusive of all contents, at fifteen percent (15%) off the fair market price, acceptable to all parties."

Roger testified he ordered an appraisal of Robbert's property at Robbert's request. The appraisal of 5018 North Kenmore, dated August 21, 2000, was for $540,000. Roger said he was shocked when he received the appraisal because he thought the appraised value was too high. He took the appraisal to Robbert and told her he could not afford the price, and he did not want to buy the property. Roger said Robbert offered to sell him the property for $400,000, and he accepted. She told him to deduct from the purchase price any future expenses he incurred for repairs. According to plaintiffs, their agreement was memorialized in a document dated November 2000. At issue in this case is the legal effect of that document. The document states, in its entirety:

"November, 2000

TO WHOM IT MAY CONCERN:

Be it known that upon my demise, the residence commonly known as 5018 N. Kenmore Avenue, Chicago, Illinois (the 'Property [sic]) shall be sold to Roger or James Hoxha of Chicago, Illinois for the sum of Four Hundred Thousand Dollars ($400,000.00) (the "Purchase Price").

It is understood and agreed that any expenses incurred by the Hoxhas for the upkeep of the Property during my lifetime shall be reimbursed by deducting the amount of said expenses in maintaining the Property on my behalf from the Purchase Price.

Be it further known that for many years, the Hoxha family has been more than friends and are like family, and I love and appreciate them all very much."

The document is signed, "Doris N. Robbert." The document is notarized by Theresa Lynn Wong, dated November 1, 2000.

Roger said Robbert signed the November 2000 document in front of him, put it back in the envelope, and gave it to him. After he received the document, he paid for several repairs to Robbert's property. He did not ask Robbert to pay him back for the repairs because "that was the deal."

James Hoxha testified he saw the document in November but waited to get it

4

notarized because he was busy. In early 2001, he took the document to Wong to be notarized. Wong told him she would have to see the person who signed the document. She said her seal had expired, and they would have to wait until she had her seal renewed. In the summer of 2001, James and Wong went to see Robbert. Wong asked Robbert if she had signed the document and if she knew what it said. Robbert answered yes to both questions. At Robbert's request, Wong wrote the date as "November 1, 2000." At trial, Wong asserted her Fifth Amendment right not to testify.

Forrest testified she was the executor of Robbert's will and the successor beneficiary of the land trust that owned the property. She had known Robbert since 1975. They were friends. She helped Robbert manage her finances. Forrest said she was not aware of the November 2000 document until the Hoxhas sent it to her after Robbert's death.

Diane Marsh, a forensic document examiner, testified she compared the signature on the November 2000 document to several known samples of Robbert's signature. She concluded the signature on the November 2000 document was Robbert's.

The trial court held specific performance of the November 2000 document was unavailable to the plaintiffs. Because plaintiffs did not sign the document, there was no mutuality of obligation. In addition, the alleged contract contained "no closing date, no reference to financing, no reference to prorations, no default provision, no reference to form of conveyance, no mention of warranties, no reference to the first floor tenant, and no mention [of] the form of notices."

5

The court held the document was, in effect, a testamentary document because it allowed Robbert to retain an asset during her life and dispose of it upon her death. However, the document did not meet the strict requirements regulating the making of wills. The court further found plaintiffs failed to prove that Robbert executed the document. Although the court denied plaintiffs specific performance, the court awarded them $8,270 in unreimbursed funds for the maintenance and repair of the subject property.

DECISION

I. Specific Performance

The remedy of specific performance rests within the sound discretion of the trial court, based on all the facts and circumstances in evidence. Butler v. Kent, 275 Ill. App. 3d 217, 227, 655 N.E.2d 1120 (1995). The findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. Butler, 275 Ill. App. 3d at 227. The trial court's factual determinations are due great deference and contradict the manifest weight of the evidence only if an opposite conclusion is clearly evident. Robbins v. Board of Trustees of the Carbondale Police Pension Fund, 177 Ill. 2d 533, 538, 687 N.E.2d 39 (1997).

Plaintiffs contend the defendants admitted Robbert signed the memorandum when they failed to attach an affidavit of the truth of the statement in their answer that they lacked knowledge sufficient to form a belief about whether Robbert signed. The relevant statute, 735 ILCS 5/2-610 (West 2000), provides an allegation is denied when the answering party states in his or her pleading "he or she has no knowledge sufficient

to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge***"  Here, defendants' claim of lack of knowledge is contained in their answer, which includes Donna Forrest's section 1-109 Verification by Certification that the statements in the Answer are true and correct.  735 ILCS 5/1-109 (West 2000).  We believe the certification satisfies the section 2-610 requirement.  See Griffin v. Universal Casualty Co., 274 Ill. App. 3d 1056, 1063, 654 N.E.2d 694 (1995) (certification was the equivalent of an affidavit under Supreme Court Rule 191).  The allegation was denied by defendants.

The trial court held the plaintiffs did not meet their burden of proving Robbert executed the November 2000 "agreement." The court's holding contradicted the expert's testimony regarding the authenticity of Robbert's signature on the November 2000 document.  That is, there never was a valid contract.  We find the court's conclusion that the signature is not authentic is not against the manifest weight of the evidence, given the suspicious circumstances in this case.  These include the notary back-dating her signature on the document, the fact that the successor beneficiary had no knowledge of the alleged contract, the peculiar wording of the document, and the fact that plaintiffs had no knowledge that the land was held in trust.  The trial court, as finder of fact, had the right to make its own handwriting sample comparisons when deciding whether the signature was authentic, expert opinion or not.  See 1601 South Michigan Partners v. Measuron, 271 Ill. App. 3d 415, 417-18, 648 N.E.2d 1008 (1995).  Here, the trial court had more than the comparisons; it had circumstances that led it to the conclusion the Hoxhas were not worthy of belief.  That was a reasonable

conclusion. The document, in effect, is unsigned. For that reason alone we affirm the trial court's judgment. We will, however, address other issues raised by the appellant.

To state a cause of action for specific performance, the plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or refusal of the defendant to perform his part of the contract. Schwinder v. Austin Bank of Chicago, 348 Ill. App. 3d 461, 473, 809 N.E.2d 180 (2004); McCormick Road Associates L.P. II v. Taub, 276 Ill. App. 3d 780, 783, 659 N.E.2d 52 (1995).

We find the plaintiffs have not met their burden of showing they entered into a valid, binding contract with Robbert, much less a contract that would support specific performance. The purported contract is addressed "to whom it may concern"--language that evokes a memo or letter rather than a contract. There is no language indicating the property is held in trust and no language directing the trustee to sell the property. In fact, the document does not suggest the name or title of the person or entity who is to sell the property to the Hoxhas. The successor beneficiary is not mentioned by name or title. The plaintiffs did not sign the document, nor does the document require any consideration. Although the document states that "any expenses incurred by the Hoxhas for the upkeep of the Property during my lifetime shall be reimbursed by deducting the amount of said expenses" from the purchase price, the Hoxhas are not bound to maintain the property.

The purported contract does not contain the required specificity for a court to grant specific performance. In order for a court to grant specific performance, the terms of the contract must be clear, definite, and unequivocal. McCormick, 276 Ill. App. 3d at 783. "Where the court would be left to order further negotiations and where the parties have yet to reach agreement on essential terms, specific performance is not available." Cinman v. Reliance Federal Savings & Loan Ass'n, 155 Ill. App. 3d 417, 423-24, 508 N.E.2d 239 (1987).

In McCormick, an agreement to purchase property was too indefinite to be specifically enforced because the required mortgage lacked essential terms. McCormick, 276 Ill. App. 3d at 783. The mortgage clause in the agreement failed to specify the mortgage amount, mortgage term, type of mortgage, interest rate, amortization period, grace period, notice provisions, and default provisions. McCormick, 276 Ill. App. 3d at 783-84. The alleged contract in this case is more deficient. Missing from the contract are any references to the land trust, and any references to financing, defaults, warranties, notices, the closing date, and the first-floor tenant. The contract, if there is one, would fall far short of the specificity required for a court to order specific performance.

II. Power of a Beneficiary to Sell Property Held in Trust

Plaintiffs contend the November 2000 document is an enforceable contract between Robbert and the Hoxhas. Plaintiffs contend Robbert sold the property within her lifetime when she committed to selling it to plaintiffs upon her death, as much as

10

if she had chosen a specific calendar date for the date of sale. However, even if this court believed that Robbert signed the November 2000 document and decided to construe it as a contract rather than a testamentary instrument, plaintiffs would not prevail. The document is not a valid contract to convey property held in an Illinois land trust.

In an Illinois land trust, the trustee holds both legal and equitable title to any real property held in trust. "The beneficiary*** has the exclusive power to direct or control the trustee in dealing with the title and the exclusive control of the*** selling of the trust property." 765 ILCS 430/1 (West 2000). The interest retained by the beneficiary, including any power to direct the sale of real property, is a personal property interest rather than a real property interest in the legal or equitable title. LaSalle Bank, N.I. v. Fist American Bank, 316 Ill. App. 3d 515, 524, 736 N.E.2d 619 (2000). A land trust beneficiary may contract to sell real property that is the subject of a land trust as long as the trust agreement vests the beneficiary with the sole right to direct the trustee to convey title. Espevik v. Kaye, 277 Ill. App. 3d 689, 694-95, 660 N.E.2d 1309 (1996), citing First National Bank of Barrington, Trust No. 11-1317 v. Oldenburg, 101 Ill. App. 3d 283, 287, 427 N.E.2d 1312 (1981).

However, under one line of Illinois cases, the beneficiary must either explicitly or constructively exercise her power to direct the trustee; she cannot contract to convey title as if she were the owner of the property. First National Bank of Barrington, 101 Ill. App. 3d at 289, citing Madigan v. Buehr, 125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431 (1970). The beneficiary may constructively exercise her power to direct by disclosing either that the property is held in trust or that she is the beneficiary of a land trust. " '[I]f a beneficiary of a land trust deals with the property as if no trust existed and contracts as an owner to sell the property, the contract is void as being beyond the beneficiary's power to act.' " Nikolopulos v. Balourdos, 245 Ill. App. 3d 71, 78, 614 N.E.2d 412 (1993), quoting Jacobs v. Carroll, 46 Ill. App. 3d 74, 79, 360 N.E.2d 136 (1977).

The so-called "contract" in this case does not disclose that Robbert is a beneficiary of a land trust or that the Kenmore Avenue property is held in a land trust. Further, plaintiffs testified they did not know the property was held in a land trust. Roger Hoxha testified he never told Forrest, the land trustee, or anyone else that Robbert had given him a right to buy the property for $400,000. There is no evidence anyone else informed the land trustee about the alleged contract. It is a

12

safe assumption that the land trustee knew nothing about it.

Given our view of the non-viability of the November 2000 document, there is no need to determine whether these decisions concerning the authority of a beneficiary to sell trust property ordain the result we reach in this case.  The trust agreement limited to Robbert's lifetime her power to transfer the property.  The purported contract directs that the property "shall be sold" upon Robbert's death.  Because Robbert's power to direct a sale ended at the time of her death, the document is unenforceable as a contract.

Plaintiffs point to the February 27, 1998, Amendment to Trust Agreement to support their claim that Robbert had the authority to bind her successor beneficiary. The Amendment provides:

> "DORIS ROBBERT, alone, during her lifetime, may sell,
> assign, transfer or otherwise dispose of all or any part of her
> beneficial interest hereunder, or all or any part of the trust
> property***"

That language does not support the plaintiffs' position.  In fact, it undercuts it. True, the Amendment would have allowed Robbert to sell the property during her lifetime without trustee approval, but it clearly does not authorize the post-mortem binding of a successor beneficiary to sell the property.

The beneficiaries of a land trust exercise their powers, including the power to

13

direct, by virtue of a contract, the trust agreement. <u>In re Estate of Bork</u>, 145 Ill. App. 3d 920, 926, 496 N.E.2d 329 (1986). The relationship between the trustee and beneficiaries of a trust is determined by the documents comprising the trust agreement. <u>Bork</u>, 145 Ill. App. 3d at 926. Here, the Amendment to Trust Agreement provides, in the event of Robbert's death,

> "all interest of said DORIS ROBBERT shall <u>immediately</u>
> pass to and vest in DONNA M. FORREST (friend) if she is
> then surviving, but if she does not so survive, then to LINDA
> FORREST NILSON." (Emphasis added.)

Because Robbert's interest passed to Forrest immediately upon Robbert's death, Robbert's power to direct the trustee also passed to Forrest.

CONCLUSION

We affirm the trial court's judgment in favor of the defendants on the issue of specific performance. The court's ruling granting money damages to plaintiffs for repairs to the property was not appealed.

Affirmed.

GARCIA, P.J., and HALL, J., concur.