2016 IL App (1st) 152362

No. 1-15-2362

Fifth Division
June 30, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| *In re* ESTATE OF STEPHEN MICHAEL AGIN, Deceased | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Jessica Agin, Supervised Administrator, Petitioner-Appellee, | ) ) ) | No. 2014 P 5937 |
| v. | ) ) ) | The Honorable James G. Riley, |
| Janice M. Marzovillo, Stephen L. Agin, Cynthia M. McKennas, and Mary L. Agin, Respondents-Appellants). | ) ) ) ) ) | Judge Presiding. |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from the probate court's finding that decedent Stephen Michael Agin's fractional interest in a land trust established by his uncle was an asset of decedent's estate, rather than passing directly to his children, respondents Janice M. Marzovillo, Stephen L. Agin, Cynthia M. McKennas, and Mary L. Agin. On appeal, respondents argue that the probate court erred in its interpretation of the land trust and that, under the terms of the land trust, decedent's interest in the trust should have passed directly to his descendants *per*

*stirpes* instead of being considered an asset of his estate. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        Decedent Stephen Michael Agin died on April 10, 2014, at age 82, without leaving a will. Jessica Agin, decedent's wife, and Stephen L. Agin, one of decedent's children from a prior marriage, filed cross-petitions for letters of administration in October 2014, and, on November 17, 2014, Jessica was named supervised administrator of decedent's estate. On the same day, Jessica filed an affidavit of heirship stating that she was decedent's wife and that decedent had four children from a prior marriage, all of whom were of legal age and mentally competent, and the probate court entered an order declaring Jessica and respondents to be decedent's only heirs.

¶ 4        On January 16, 2015, Jessica filed an inventory of the decedent's estate, which listed as personal property "Chicago Title Escrow Account 201448039," with a value of $8052.08. On February 6, 2015, respondents filed an objection to the inventory, claiming that the funds in the Chicago Title escrow account were the property of respondents and not an asset of the estate.

¶ 5        The objection claimed that on October 10, 2001, decedent's uncle, Michael Yergovich, signed a trust agreement naming Chicago Title Land Trust Company (Chicago Title) as trustee of trust No. 1110232 (the trust), pursuant to which Chicago Title took legal and equitable title to a single family home in Chicago; the trust agreement was amended on October 22, 2001, and under the terms of the trust, decedent was to be awarded a 4% interest in the trust upon Yergovich's death. Yergovich died on January 5, 2014, prior to the termination of the trust, and the objection claimed that under the terms of the trust, "a 1/25th

interest in said trust immediately vested in [decedent] and his descendants per stirpes." The single family home was sold on November 18, 2014, and decedent's portion of the proceeds was placed into the Chicago Title escrow account because Jessica claimed an interest in the proceeds. The objection claimed that Jessica had been advised by the attorney who represented Yergovich in connection with the formation of the trust that "it was the intent of Mr. Yergovich in forming said trust that the 1/25th interest in the proceeds from the sale of the subject property being held in Chicago Title Escrow Account 201448039 would be distributed to the per stirpal descendants of [decedent]." As respondents were decedent's only *per stirpes* descendants and Jessica was not a *per stirpes* descendant, the objection requested that the probate court find that the funds in the Chicago Title escrow account were the property of respondents and not an asset of the estate.

¶ 6        As an exhibit, the objection contained a copy of the trust agreement and its amendment.[1] The trust agreement was dated October 10, 2001, and gave legal and equitable title to the property to Chicago Title, with Yergovich named as beneficiary and retaining the sole power of direction. The trust agreement provided, in relevant part:

> "The interest of every beneficiary and of any person who may become entitled to any interest under this trust shall consist only of (1) the power to direct the trustee to deal with title to the property; (2) the power to manage, possess, use and control the property; and (3) the right to receive the earnings, avails and proceeds from leases and other uses and from mortgages, sales and other dispositions of the property. Such rights and powers shall be personal property and may be assigned as such. On the

---

[1]The February 6, 2015, objection makes reference to an "Exhibit A," but the exhibit was not initially included with the objection. Respondents later filed "Exhibit A" separately on March 18, 2015.

death of any beneficiary his interest, except as otherwise specifically provided, shall pass to his executor or administrator and not to his heirs at law. *** The death of any beneficiary shall not terminate the trust or affect the rights or powers of the trustee or of the beneficiaries except as provided by law."

The trust agreement further provided:

"On the written direction of the party or parties *** having the power of direction the trustee will make deeds for, or deeds conveying directly to a trust Grantee, or mortgages or trust deeds *** or execute leases or otherwise deal with the title to the trust property including cash or other assets subject to the trust. The beneficiaries by written instrument delivered to the trustee may revoke the foregoing power of direction and designate the person thereafter to exercise the power. Such instrument shall be signed by all the then beneficiaries."

¶ 7    The amendment to the trust[2] was dated October 22, 2001, and provided that "[i]n the event of death of said Michael Yergovich prior to termination of this trust or prior to other disposition of his interest hereunder, then all interest of said Michael Yergovich shall immediately pass and vest, as follows, per stirpes." The amendment then listed a 20% interest to each of Yergovich's four then-living siblings, and a 4% interest to each of five named nieces and nephews, including decedent.[3]

---

[2]The title to the amendment reads, "Amendment to Trust Agreement with LaSalle National Bank under Trust Number 126582 dated August 24, 2000," which is neither the entity nor the trust number of the Chicago Title trust at issue on appeal. We note that there is nothing in the record explaining this discrepancy. However, both parties used this same document before the probate court as representing an amendment to the trust at issue on appeal. Consequently, we will do the same.

[3]According to respondents' brief, the named nieces and nephews were all the children of a sister who had predeceased Yergovich.

¶ 8    In response to respondents' objection, petitioner claimed that the language of the trust vested decedent's right to his fractional interest in the trust at the moment of Yergovich's death and that decedent could thereafter dispose of the property as he wished; petitioner claimed that the language of the trust did not limit the disposition of the interest to decedent's lineal descendants, as respondents claimed.

¶ 9    On May 8, 2015, the parties came before the probate court for a hearing on respondents' objection. According to the bystander's report submitted by the parties and certified as accurate by the probate court, "[a]t the outset of the hearing, Judge Riley stated that he had read the materials submitted to him and that, upon Michael Yergovich's death, the interest of the decedent, Stephen M. Agin, in Chicago Title Land Trust Number 1110232 *** vested, it became his, and Mr. Agin could have done whatever he wanted to do with it." Respondents' attorney pointed out the "*per stirpes*" language to the court, but the court responded "that the 'per stirpes' language only applies to successor beneficiaries who died before Michael Yergovich." Respondents' attorney "replied that Trust 1110232 does not say that the 'per stirpes' language only applies to successor beneficiaries," and the probate court "stated that the trust did not need to." Respondents' attorney "then pointed out to Judge Riley that the trust at issue is a land trust, not a conventional trust, and that this difference was significant." The probate court responded "that it did not matter."

¶ 10    On the same day, the probate court entered an order finding (1) that the trust agreement was not ambiguous and (2) that the funds in the Chicago Title escrow account were an asset of decedent's estate. The probate court ordered that the funds in the Chicago Title escrow account be disbursed to decedent's estate. The court further found that there was no just reason to delay appeal and stayed the order pending appeal.

¶ 11    On June 5, 2015, respondents filed a motion for reconsideration of the probate court's May 8, 2015, order, in which they argued that (1) "the parties did not present case law addressing the formation and construction of land trusts under Illinois law and properly focus the Court on the issues raised by said objection" and (2) there were "facts relevant to the issues raised by the objection which were not presented to the Court prior to its ruling."[4] Specifically, the motion stated that on February 25, 2014, Bruce Becker, the attorney who represented Yergovich in connection with the formation of the trust, sent a letter to the trust's " 'Contingent Beneficiaries (and Successors Thereto)' " in which he advised that " '[e]ach contingent beneficiary must sign a Ratification of Trust Agreement reflecting that the contingent beneficiary confirms and approves the terms of the Trust Agreement.' " Becker also requested that each contingent beneficiary revoke his or her fractional share of the power of direction and grant power of direction under the trust to Karen Giacomino and Mary Lou McCan[5] in order to sell the property held in the trust. On March 18, 2014, decedent signed the letter and returned it to McCan. Becker later also sent a letter to the same contingent beneficiaries setting forth the scope and terms of his legal representation, and Jessica returned the letter signed on decedent's behalf shortly before his death. Thus, the motion argued that "[a]ll interested parties, including the decedent, ratified and confirmed the terms of [the trust], including the 'per stirpes' language, and granted the power of direction to Mary Lou McCan and Karen Giacomino after Mr. Yergovich passed away."

¶ 12    The motion further stated that on August 12, 2014, Becker sent a letter to respondents and forwarded copies of the trust agreement and amendment; the February 25, 2014, letter

---

[4]We note that the facts and law referred to in the motion for reconsideration were in existence at the time that respondents filed their objection to petitioner's inventory; that is, they were not newly discovered facts or newly decided cases.

[5]McCan was one of the nieces named in the amendment to the trust agreement; Giacomino's relationship to the trust is not clear from the record on appeal.

signed by decedent, as well as an unsigned copy for respondents to sign; an amended version of the engagement letter; a listing agreement for the sale of the property held in the trust; and a ratification of trust agreement. In the letter, Becker stated that respondents should sign and return the February 25, 2014, letter; the amended engagement letter; and the ratification of trust agreement, advising that " 'this matter cannot proceed without your approval and participation.' " These documents were signed by respondents and returned to Becker, but respondents' attorney enclosed a letter stating that " '[his] clients strongly object to any characterization of Jessica Agin as a contingent beneficiary of [the trust],' and that they 'do not believe that any approval by Jessica Agin is necessary or appropriate to proceed with this transaction.' " Copies of all of the letters were attached to the motion.

¶ 13    On July 30, 2015, the parties came before the probate court for a hearing on respondents' motion for reconsideration. According to the bystander's report submitted by the parties and certified as accurate by the probate court, "[a]t the outset of the hearing, Judge Riley stated that he had read the materials submitted to him and that he believed that his ruling on May 8, 2015 was correct. Judge Riley then stated that the ratification argument in the motion for reconsideration piqued his interest." The probate court indicated that it was the court's understanding that any ratification of the trust would have needed to be accepted by the trustee and asked respondents' attorney whether there was any documentation indicating that the trustee had accepted the ratification. Respondents' attorney responded that "his clients did not have a copy of the trustee's acceptance of the ratification agreement but that there was no dispute that the ratification agreement was accepted by the trustee." The attorney also "pointed out that the ratification agreement also provided that the power of direction was granted to Mary Lou McCan and Karen Giacomino, and that the property which was the

7

corpus of the land trust sold pursuant to the direction of Ms. McCan and Ms. Giacomino." The attorney argued that, since decedent had transferred his fractional share of the power of direction to McCan and Giacomino, "at the decedent's death, his interest in the trust, which still existed at the time, passed pursuant to the express terms of the trust to his per stirpal descendants, not to his estate." In response, the court pointed to the language of the trust concerning Yergovich's death in which case " 'all interest of said Michael Yergovich shall immediately pass and vest, as follows,' " and "stated that, upon Mr. Yergovich's death, the decedent had a vested interest in the trust asset and, at his death, that interest passed to his estate and not pursuant to the language of the trust even though the trust existed at that time." The probate court then entered an order denying respondents' motion for reconsideration.

¶ 14     Respondents timely filed a notice of appeal, and this appeal follows. Petitioner did not file a brief on appeal, so we take the instant appeal for consideration on the record and respondents' brief only.

¶ 15                                                    ANALYSIS

¶ 16     On appeal, respondents claim that the trial court erred in its interpretation of the trust language and that decedent's fractional interest in the trust should pass to them instead of being considered an asset of the estate. As an initial matter, respondents argue that the standard of review in the instant case is *de novo*, as we are asked to consider the terms of a trust document. However, that is not entirely accurate.

¶ 17     To the extent that we consider the construction and legal effect of a trust document, we are reviewing the probate court's conclusions of law. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). In reviewing the probate court's conclusions of law, as respondents note, our standard of review is *de novo. Eychaner*, 202 Ill. 2d at 252 (citing *Norskog v. Pfiel*, 197 Ill.

2d 60, 70-71 (2001), and *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998)). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Dass v. Yale*, 2013 IL App (1st) 122520, ¶ 33.

¶ 18    However, in their motion to reconsider, respondents set forth new facts concerning correspondence of attorney Becker with alleged beneficiaries and raised new arguments concerning ratification, none of which had been previously raised before the probate court. Where the denial of a motion to reconsider "is based on new matters, such as additional facts or new arguments that were not previously presented during the course of proceedings leading to the order being challenged, we are to employ an abuse of discretion standard of review." *River Village I, LLC v. Central Insurance Cos.*, 396 Ill. App. 3d 480, 492 (2009); *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 415 (2006). "The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand. [Citations.] Accordingly, a trial court is well within its discretion to deny such a motion and ignore its contents when it contains material that was available prior to the hearing at issue but never presented. [Citations.]" *River Village I*, 396 Ill. App. 3d at 492-93. Thus, while we review the interpretation of the trust documents *de novo*, we will apply an abuse of discretion standard of review to those claims raised for the first time in the motion for reconsideration.

¶ 19    Turning, then, to the merits of respondents' arguments, respondents argue that the probate court failed to consider Yergovich's intent in entering into the trust. "In interpreting trusts, which are construed according to the same principles as wills, the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public

9

policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009) (citing *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513 (1981)). "General rules of construction of written instruments apply to the construction of trust instruments, whether they are contracts, deeds, or wills." *Storkan v. Ziska*, 406 Ill. 259, 263 (1950).

¶ 20 "When the language of the document is clear and unambiguous, a court should not modify or create new terms." *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 24). "However, where the language of a trust is ambiguous and the settlor's intent cannot be determined, a trial court may rely on extrinsic evidence to aid construction." *Ruby*, 2012 IL App (1st) 103210, ¶ 19 (citing *Rosen*, 2011 IL App (1st) 093533, ¶ 24). Language is ambiguous when it is reasonably susceptible to more than one meaning. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011).

¶ 21 In the case at bar, the amendment to the trust provided that, "[i]n the event of death of said Michael Yergovich prior to termination of this trust or prior to other disposition of his interest hereunder, then all interest of said Michael Yergovich shall immediately pass and vest, as follows, per stirpes," and then listed, *inter alia*, a 4% interest to decedent. Respondents claim that the inclusion of the "*per stirpes*" language means that Yergovich "intended that if one of the individuals identified by him was not alive at the time of the distribution that person's share would go to his/her per stirpal descendants." The probate court, however, found that the language of the trust agreement was unambiguous and that "upon Michael Yergovich's death, the interest of the decedent, Stephen M. Agin, in Chicago Title Land Trust Number 1110232 *** vested, it became his, and Mr. Agin could have done whatever he wanted to do with it." We can find no error in the probate court's conclusion.

¶ 22    The disagreement over the language of the trust appears to center on the timing of the vesting of decedent's interest in the trust. Respondents argue that we must look to the status of the beneficiaries at the time that the property held in the trust was sold, while the probate court looked to the status of the beneficiaries at the time of Yergovich's death. We agree with the probate court's interpretation.

¶ 23    Under the express language of the trust amendment, in the event of Yergovich's death prior to termination of the trust, "all interest of said Michael Yergovich shall *immediately* pass and vest" (emphasis added) in the way set out in the amendment. Thus, a 4% beneficial interest in the trust passed to decedent at the moment of Yergovich's death. See *Hoxha v. LaSalle National Bank*, 365 Ill. App. 3d 80, 88 (2006) (in light of language in a trust agreement that " 'all interest of said DORIS ROBBERT shall *immediately* pass to and vest in DONNA M. FORREST (friend) if she is then surviving' " (emphasis in the original), noting that "Robbert's interest passed to Forrest immediately upon Robbert's death"). Decedent was alive at the time of Yergovich's death and, at that moment, a 4% beneficial interest in the trust became his to do with what he wished. We see no reason why this would change with the inclusion of the "*per stirpes*" language.

¶ 24    "*Per stirpes*" is a term used to specify the method of distribution of property. *Goodwine State Bank v. Mullins*, 253 Ill. App. 3d 980, 1006 (1993). "The words *per stirpes* denote a taking by right of representation of that which an ancestor would take if living." *Goodwine State Bank*, 253 Ill. App. 3d at 1006. However, contrary to respondents' position, the term designates the method of determining how the estate will be divided among those entitled to take—it has no application in determining who those entitled to share in the estate are. See *Goodwine State Bank*, 253 Ill. App. 3d at 1006-07 ("[T]he specification that distribution shall

11

be made *per stirpes* rather than per capita is an instruction of the quantum of the estate which is to be given to each of Harold's surviving descendants. This is not inconsistent with the requirement that only the descendants of Harold who survive him may take under the will; rather, it is an instruction of how the estate shall be distributed to those descendants who do survive Harold."). Respondents cite no cases in which the inclusion of the term "*per stirpes*" was used to determine *who* was entitled to take, as opposed to *how* they were to take.[6]

¶ 25    Respondents argue that "[t]here is nothing in Trust 1110232 which indicates that Mr. Yergovich did not intend to treat a successor beneficiary identified by name (and his/her per stirpal descendants) who outlived him the same as how he intended to treat a successor beneficiary identified by name (and his/her per stirpal descendants) who died before him. Nor is there anything in Trust 1110232 which indicates that the interest of a successor beneficiary who outlived Mr. Yergovich, but died while Trust 1110232 was still in existence and prior to the final distribution and termination of the trust, should not pass 'per stirpes.' " However, this overlooks the critical language of the trust amendment, identified by the probate court: that, in the event of Yergovich's death prior to termination of the trust, "all interest of said Michael Yergovich shall *immediately* pass and vest" (emphasis added) in the way set out in the amendment. Thus, the express language of the trust itself sets out a dividing line between the time prior to Yergovich's death and the time after Yergovich's death–at the moment of death, Yergovich's interest would pass to those named in the amendment, *per stirpes*. This means that if decedent was not alive at the moment of Yergovich's death, his 4% interest would pass to his descendants, *per stirpes*. However,

---

[6]We note that respondents are entitled to a share of decedent's interest, even if it is considered an estate asset, as half of decedent's estate would pass to them *per stirpes* under the Probate Act of 1975. 755 ILCS 5/2-1(a) (West 2012) ("If there is a surviving spouse and also a descendant of the decedent: 1/2 of the entire estate to the surviving spouse and 1/2 to the decedent's descendants per stirpes.").

because decedent *was* alive at the moment of Yergovich's death, his 4% interest passed to decedent directly. Accordingly, we cannot find that the probate court erred in finding that the interest in the trust was decedent's property and properly part of his estate.

¶ 26    We also find unpersuasive respondent's argument that the probate court "failed to appreciate the significance that Trust 1110232 is a land trust, not a conventional trust." In a conventional trust, the trustee holds the legal title and the beneficiary holds the equitable title. *In re Estate of Mendelson*, 298 Ill. App. 3d 1, 3 (1998). However, in an Illinois land trust, the trustee holds both legal and equitable title to any real property held in the trust. *Hoxha*, 365 Ill. App. 3d at 87. "The interest retained by the beneficiary, including any power to direct the sale of real property, is a personal property interest rather than a real property interest in the legal or equitable title." *Hoxha*, 365 Ill. App. 3d at 87. Thus, a settlor of a land trust cannot transfer legal and equitable title in the real estate held in the trust to another but can only convey his beneficial interest in the trust. *Favata v. Favata*, 74 Ill. App. 3d 979, 982 (1979). In the case at bar, respondents take issue with the probate court's comment in denying their motion for reconsideration that "upon Mr. Yergovich's passing, the decedent had a vested interest in the trust asset." They argue that decedent never had a vested interest "in the trust asset," but only held a beneficial interest in the trust. We cannot find that this misstatement[7] by the probate court has any effect on the court's ultimate conclusion: that 4% of Yergovich's interest in the land trust passed to decedent immediately upon Yergovich's death.

---

[7]We note that the language purportedly used by the probate court comes from a bystander's report, not from a verbatim transcript of the proceedings. We further note that in the bystander's report concerning the initial hearing before the court, the court made no reference to an interest "in the trust asset" but only discussed "the interest of the decedent." Thus, this appears to be a misstatement and not a misunderstanding of the applicable law.

¶ 27    Additionally, respondents point to the fact that decedent assigned his share of the power of direction to McCan and Giacomino, arguing that this meant that his interest "was not vested and irrevocable" and therefore "was subject to the terms of the trust, including the terms defining successor beneficiaries," at the time of his death. Respondents are correct that "when the settlor of a land trust retains the power to direct the acts of a trustee to the exclusion of a beneficiary, the settlor effectively retains the power to defeat the beneficiary's interest during his lifetime, and a beneficiary will not be held to have a present irrevocable interest unless she can show by clear and convincing evidence that the settlor had a donative intent to make an irrevocable *inter vivos* gift of the beneficial interest." *Caleca v. Caleca*, 63 Ill. App. 3d 414, 417 (1978). However, we note that the instant case is different from those respondent cites in that it was not the settlor defeating a beneficiary's interest during his lifetime but rather was a beneficiary voluntarily assigning his power of direction to another after the settlor's beneficial interest had passed to the beneficiary. Furthermore, as explained earlier, the "terms of the trust" only concerned themselves with the status of the beneficiaries at the time of Yergovich's death. Thus, we do not find this argument supports respondents' position.

¶ 28    Finally, respondents argue that the probate court "repeatedly focused on the passing of Michael Yergovich but ignored the actions taken by [Yergovich's attorney] Mr. Becker to effectuate Mr. Yergovich's intent" and further argue that the probate court "overlooked" decedent's ratification of the trust. However, in construing a trust, "the settlor's intent is to be determined solely by reference to the plain language of the trust itself, and extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous and the settlor's intent cannot be ascertained." *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996). The probate

court here found that the trust agreement was not ambiguous, and respondents do not argue that it was ambiguous. Accordingly, the probate court properly focused on the trust agreement itself and not on Becker's actions after Yergovich's death in interpreting the trust. Furthermore, the facts concerning Becker's actions and any purported ratification were presented for the first time in respondents' motion for reconsideration. As noted, "a trial court is well within its discretion to deny such a motion and ignore its contents when it contains material that was available prior to the hearing at issue but never presented. [Citations.]" *River Village I*, 396 Ill. App. 3d at 492-93. Thus, we find no error in the probate court's actions here.

¶ 29                                         CONCLUSION

¶ 30        The probate court properly determined that the proceeds from the sale of the real estate in Yergovich's land trust were an asset of decedent's estate, because under the terms of the trust agreement, upon Yergovich's death, a 4% beneficial interest in the land trust passed to decedent.

¶ 31        Affirmed.